**FORT BEND COUNTY WRECKER ASSOCIATION, Appellant,**

v.

**Fort Bend County Sheriff Milton WRIGHT, In his Official Capacity, Appellee.**

No. 01–99–00431–CV.

Court of Appeals of Texas, Houston(1st Dist.).

Feb. 22, 2001.

Booker T. Morris, III, Houston, TX, for Appellant.

Randall W. Morse, Richmond, TX, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL [1] and PRICE.[2]

## OPINION

SCHNEIDER, Chief Justice.

Appellee, the Fort Bend County Sheriff's department, maintains a list of wrecker and towing companies on their "Wrecker Rotation List." The Sheriff's department uses this list to determine which towing company will be assigned to tow cars when the Sheriff's Department requests a non-consensual tow.[3] Fort Bend County Sheriff Milton Wright enacted numerous rules and regulations (hereinafter the "Wrecker Rules") specifying

the requirements that wrecker truck companies must meet in order to stay on their County's Wrecker Rotation List. The Wrecker Rules went into effect on September 1, 1998. The legitimacy of the Wrecker Rules are the subject of this appeal.

## FACTS AND PROCEDURAL BACKGROUND

### A. The Non–Consent Tow Procedure before September 1, 1998

Prior to September 1, 1998, when the Sheriff's department needed a non-consensual tow, they called appellant, the Fort Bend County Wreckers Association (hereinafter the "Association"). The Association is a voluntary organization that responds to non-consensual tow request calls by the Sheriff's department. The Association charges a $300 application fee for members to join.

Before September 1, 1998, the Association broke Fort Bend County into three zones. When a call for a non-consensual tow came in from the Sheriff's department, the Association's dispatch office used a two-way radio to dispatch the wrecker at the top of their list for that particular zone to the scene. The Association members could set their own tow rates, and they collected directly from the owner of the vehicle. All members of the Association rotated down the list as the Sheriff Department calls came in. The members also paid a $10 fee to the Association for each tow call they received through the Association's dispatch system. The money that was collected was used to pay the telephone and electric bills, dispatch ser-

1. The Honorable Eric Andell, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

2. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

3. A non-consensual tow occurs when a peace officer removes a vehicle from a highway or

road without the consent of the owner pursuant to § 545.305(a) of the Texas Transportation Code. A peace officer may choose to remove a vehicle for any number of reasons, including if the vehicle is left unattended, is unlawfully parked, stolen, abandoned, or disabled. Consensual tows are tows that an individual car owner requests.

vice fees, and general Association maintenance expenses.

The Association established that 30 minutes was an average response time for each tow, and its members tried to meet this goal time. If a wrecker was unable to make it to the tow location in 30 minutes, they would radio-in that information to the dispatch office, and the wrecker was moved to the bottom of the list. Each wrecker company had one slot on the rotation list, irrespective of the number of trucks the company actually owned.

### B. The Non–Consent Tow Procedure after the Wrecker Rules went into Effect

The new Wrecker Rules completely eliminated the need for the Association, although the Association still exists. Under the Sheriff Department's new policy, a wrecker company who wished to perform non-consensual tows for the Sheriff's Department would be placed on the Wrecker Rotation List if it met the conditions specified in the Wrecker Rules. These new terms include a requirement that the wreckers apply in writing to the Fort Bend County Sheriff's Office to be placed on the wrecker list, and that they submit proof of insurance. The Wrecker Rules also require wreckers to register their storage facilities with the state as required by statute, have workers available 24 hours a day, 7 days a week, to release towed cars, and set size standards for wrecker wheels and lifts.

The Wrecker Rules impose a maximum fee of $75 for a basic tow. Additional fees are permissible under the Wrecker Rules if the tow requires extra services. The Wrecker Rules obligate a wrecker service to respond to a tow call within 40 minutes, and classifies the wrecker company as an independent contractor of the Sheriff's department. The Wrecker Rules also create four zones of operation within Fort Bend county. Each wrecker company is to maintain business within the zone for which it applied. A wrecker company is

given one spot on the Wrecker Rotation List for each tow truck it owns. Any violation of the Wrecker Rules results in a six month suspension from the rotation list. Any subsequent violations would result in permanent removal from the Wrecker Rotation List.

### C. Procedural History

Before the Wrecker Rules went into effect, the Fort Bend County Wrecker Association applied for a temporary restraining order ("TRO") to restrain the Sheriff's department from enforcing the Wrecker Rules. The TRO was denied on August 28, 1998. A hearing for a permanent injunction was held after the Wrecker Rules had been in effect for approximately nine weeks. On November 12, 1998, the trial court permanently enjoined the Sheriff's department from enforcing the provision of the Wrecker Rules that set maximum tow fees at $75 for a basic tow. All other relief requested was denied, and the trial court allowed the majority of the Wrecker Rules to remain in effect.

### D. Issues Raised on Appeal

This appeal concerns the legitimacy of the Wrecker Rules. Appellant appeals from the denial of a permanent injunction against enforcement of all the Wrecker Rules.

Appellant raises two points of error. First, appellant contends the Wrecker Rules were illegally promulgated because they were not specifically authorized by state statute, county ordinance, or the Federal and Texas Constitutions. Second, appellant alleges that because the Wrecker Rules were not authorized, they are void as a matter of law.

Appellee contends the Wrecker Rules are legal and enforceable. Appellee also raises one point of error as a cross-appellant, arguing the trial court erred in enjoining the Sheriff's department from imposing the $75 maximum fee for a basic

tow. We address these points of error together.

We review a trial court's denial of a permanent injunction under an abuse of discretion standard. *See Morris v. Collins,* 881 S.W.2d 138, 139 (Tex.App.—Houston [1st Dist.] 1994, writ denied). An abuse of discretion in denying an injunction occurs when "the trial court's findings are not supported by some evidence of substantial and probative character." *Id.* We consider whether the trial court could have come to only one decision, and whether its decision was so "arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Adust Video v. Nueces County,* 996 S.W.2d 245, 253 (Tex. App.—Corpus Christi 1999, no pet.).

### ANALYSIS

#### A. Did the Sheriff's Department have authority to enact the Wrecker Rules?

Appellant argues there was no authorization for the Fort Bend County Sheriff to promulgate the Wrecker Rules. We disagree for three reasons.

*1. § 545.305 Gives the Sheriff Implied Authority to Establish the Wrecker Rules.*

Appellant expresses concern that the Wrecker Rules are not expressly authorized by any state statute. We find the Sheriff has implied authority to establish the Wrecker Rules. A peace officer is permitted to remove a vehicle from a highway through a non-consensual tow at various times. *See* TEX. TRANSP. CODE § 545.305 (Vernon 2000). The Fort Bend County Sheriff is a peace officer. *See* TEX.CODE CRIM. PROC. art. 2.12 (Vernon 2000). Since the Sheriff has been given legislative authorization to tow a vehicle, inherent in that authorization is the right to make reasonable decisions about who is permitted to do the towing.

The legislature is not required to set forth in detail every specific power an agency has to perform its functions. *See State ex. rel. Grimes County Taxpayers Ass'n v. Texas Mun. Power Agency,* 565 S.W.2d 258, 272 (Tex.App.—Houston [1st Dist.] 1978, writ dism'd). When a grant of power is given by a statute, the statute must be construed to include the reasonable authority necessary to attain the end result. *See La Cour Du Roi, Inc. v. Montgomery County,* 698 S.W.2d 178, 188 (Tex. App.—Beaumont 1985, writ ref'd n .r.e) (citing *Terrell v. Sparks,* 104 Tex. 191, 135 S.W. 519, 521 (1911)). Thus, the Sheriff may make reasonable rules that assist him in executing the power and authority given to him to make non-consensual tows as set forth in § 545.305 of the Texas Transportation Code.

The Sheriff properly exercised this authority by enacting a reasonable set of rules. The Sheriff testified he held "numerous meetings" with the Association, and explained that many of the Wrecker Rules were based upon suggestions from the Association. For example, the Association's average goal tow time had been 30 minutes, and the Wrecker Rules allow a driver 40 minutes, or 10 extra minutes, to make a tow. The Association had Fort Bend County divided into 3 zones, and the Sheriff chose to divide the county into 4 zones to decrease the distance each wrecker driver would have to travel. Any wrecker could apply for more than one zone, thus maintaining their complete area of operation. This division was not arbitrary. The Sheriff testified that driving tests from different points within each zone were conducted. Finally, the Sheriff testified that it was the Association that recommended the $75 fee for a basic tow, and the Sheriff's Department merely adopted the Association's suggestion.

*2. The Sheriff has Right to Make and Enforce Policies by Virtue of his Office*

The Wrecker Rules were also permissible because a Texas Sheriff has

the power to make and enforce rules, regulations, and policy. *See e.g., Rhode v. Denson,* 776 F.2d 107, 109 (5th Cir.1985). Sheriffs have the "authority to define objectives and choose the means of achieving them." *Id.; see also, Turner v. Upton County,* 915 F.2d 133, 135 (5th Cir.1990). In Texas, a county sheriff is the county's final policy maker "by virtue of the office to which the sheriff has been elected." *Bennett v. Pippin,* 74 F.3d 578, 586 (5th Cir.1996).

The Sheriff testified he enacted the Wrecker Rules because wanted to open up the non-consensual tow business to create a "level playing field" for everyone and to avoid directing all the County's towing business to members of the Association. The Sheriff has both the power and the right to make such a policy decision. Those companies who did not wish to participate in the Sheriff's new wrecker program were not required to do so.

### 3. The Sheriff is Not Creating an Ordinance

■ The Sheriff does not have the power to make ordinances. An ordinance imposed by a Sheriff might violate the separation of powers doctrine because it would allow an executive officer to create legislation. However, a Sheriff is permitted to make choices about the companies he prefers to contract with. We do not find the Sheriff's Wrecker policy in this case to be an ordinance violating the separation of powers doctrine. By definition, a departmental policy designed to refer business to a particular set of tow companies is not a law, regulation, or a provision having the force and effect of law. *See, e.g., Kustom Automotive Recovery, Inc. v. Village of Lyons,* No. 97–CV–4719, 1998 WL 887076, at *6 (N.D.Ill.Dec.11, 1998) (holding that a village police department's decision to use only one contractor for all tows is a revocable policy, and is not an ordinance with the force and effect of law).

In the *Kustom Automotive Recovery* case, the police department made a deci-sion to use a single contractor for non-consensual tows. *See id.* The court held that because towing companies could solicit other consensual and non-consensual towing business, the police department policy was not an ordinance. *See id.*

The Fifth Circuit has also held that non-consensual towing policies are not regulations or law. In *Cardinal Towing & Auto Repair v. City of Bedford,* the City decided to abandon a rotation system for non-consensual tows and chose instead to contract with one company by ordinance. The ordinance was limited to non-consensual tow situations in which the police requested a tow. *See* 180 F.3d 686, 689 (5th Cir.1999). The Court held "the City's actions did not constitute regulation or have the force and effect of law." *See id.* at 697. Therefore, the Fort Bend Sheriff's wrecker policy does not rise to the level of a regulation or law, and thus, is permissible. We hold that the Sheriff is allowed to create a wrecker rotation list and maintain policies in accordance with the list. We overrule appellant's two points of error.

### B. Are the Wrecker Rules Unconstitutional in their Regulation of Non–Consensual Tows?

■ Appellants also suggests the Wrecker Rules may be unconstitutional under the Texas and Federal Constitutions. We disagree.

■ The Wrecker Rules do not deprive the Association of due process and are constitutional. To succeed on a claim of deprivation of procedural due process, a plaintiff must be deprived of a protected property or liberty interest. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The Association had no property interest in a continuation of the towing scheme in place before the Wrecker Rules. To establish a property interest, appellants must establish more than "an abstract desire or need for" or "unilateral expectation of" the old system of towing through the Association.

*Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Instead, appellants must establish "a legitimate claim of entitlement." *Id.; see also, Blackburn v. City of Marshall,* 42 F.3d 925, 936 (5th Cir.1995).

 Texas law does not create an entitlement for access to, presence upon, or the right to control a county wrecker rotation list. *See, e.g., Wimer v. Holzapfel,* 868 F.Supp. 844, 848 (E.D.Tex.1994). A business owner cannot claim a right to government referrals when they still have right to do business with private individuals. *See Blackburn,* 42 F.3d at 938. In the *Wimer* case, an owner of a tow and wrecking service brought an action against the County Sheriff after the Sheriff removed the company from the County's Wrecker Rotational List. The court found that there no property interest or liberty interest had been created. *See Wimer,* 868 F.Supp. at 848.

In *Wimer,* as in the case before us today, the Transportation Code empowered local authorities to tow abandoned vehicles, but the Sheriff "could have used the same towing service every time. He did not have to create a list. Furthermore, once the list was created, he was under no duty to employ a rotational system." *Id .* The Sheriff's Wrecker Rules do not prevent wrecker and tow companies from performing their services for others. The Wrecker Rules only have the potential to affect how much business a single tow company will receive from the County. Therefore, the appellant's interest is a unilateral expectation of a benefit, and not a property interest. *See Walker County Wrecker & Storage Ass'n v. Walker County,* 604 F.Supp. 28, 30 (S.D.Tex.1984) (citing *Durham v. Jones,* 698 F.2d 1179, 1181 (11th Cir.1983)). We overrule the point of error.

### C. Appellee's Cross Point of Error: Can the Sheriff's Department impose a $75 Fee Cap for a Basic Tow?

 Although the Fort Bend County Sheriff's department had no obligation to create a list, the enacted Wrecker Rules were fair and reasonable. The Sheriff testified that the enacted Wrecker Rules were based on the non-consensual tow rules for many other counties. The City of Houston has regulated the tow truck industry as to pricing, licensing, areas of operation, and storage facilities for many years. *See Harris County Wrecker Owners for Equal Opportunity v. City of Houston,* 943 F.Supp. 711, 714 (S.D.Tex.1996). The Houston price cap for non-consensual towing has been upheld. *See id.* The cap in Houston is set at $57, a figure significantly lower than the Fort Bend County cap. *See id.*

We find the price cap of $75 imposed by the Wrecker Rules for a basic tow to be within the discretion of the Sheriff's office. The Sheriff has the discretion to create rules to insure public safety.

There is no evidence in the record that the Fort Bend County Sheriff's Department was engaged in price-fixing or rate-making. There was no evidence that the Sheriff's department violated the Sherman Act or any other anti-trust legislation. Appellant's allegations are insufficient to establish a claim under such statutes. *See e.g., Walker County Wrecker & Storage Ass'n,* 604 F.Supp. at 30 (finding no violation of anti-trust laws when a county sheriff altered his system referrals for official wrecking and towing).

The record reveals the trial judge granted the permanent injunction because he was concerned the Sheriff's Department was not in compliance with a Texas Attorney General Opinion. This opinion held that the Texas Department of Labor and Standards could not govern the amount a vehicle storage facility may charge for storing towed vehicles. *See* Op. Tex. Att'y Gen. No. JM–396 (1986). This opinion is not applicable to the case before us. First, it applies to an administrative agency, and not a Sheriff's department. Second, it relates only to prices caps for storage fees, not tow fees by a wrecker company.

Third, the Sheriff's Department is not setting prices. They are creating an invitation to contract. Those wrecker companies who do not wish to tow for the Fort Bend County Sheriff's Department can charge any tow fee they choose. The Sheriff's Department has merely set a fee limit as a standard to determine with whom it will contract. Finally, the Attorney General Opinion relates to price-setting ordinances and laws, and as explained above, the Sheriff's towing rules are merely departmental policies that do not have the effect of laws.

In addition, it is important to note that although Congress has enacted federal transportation laws, they have expressly exempted local regulation of the non-consensual tow industry. *See* 49 U.S.C. § 14501(c)(2)(C) (prohibiting a State or a political subdivision of a State from enforcing laws or regulations relating to the price a motor carrier may charge, but exempting the local price regulation of non-consensual towing).

We find the trial court's grant of the permanent injunction as to the Sheriff's department price caps was not supported by probative evidence and constitutes an abuse of discretion. We sustain appellee's cross-point of error.

### CONCLUSION

We overrule appellant's points of error. We sustain the Sheriff's cross-point of error. We reverse the part of the trial court's order that enjoined the Sheriff's department from setting a maximum price for non-consensual towing. In all other respects, the order of the trial court is affirmed.